# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RHODERICK BEERY, II, and <br> RHODERICK BEERY, III, <br><br> Appellants, <br><br> v. <br><br> JEFFREY ROPER, <br><br> Debtor/Appellee. | ) <br> ) <br> ) <br> ) <br> ) No. 4:22-CV-00307-JAR <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

This matter is before the Court on appeal from the Bankruptcy Court's order dismissing the appellants' complaint seeking a determination of non-dischargeability of their claims against the debtor under 11 U.S.C. § 523(a). For the reasons set forth below, the Bankruptcy Court's order is affirmed.

## BACKGROUND

Appellants Rhoderick Beery, II, and his son Rhoderick Beery, III, engaged the debtor, Jeffrey Roper, a lawyer, to represent them in contract dispute in 2008. Appellants later sued Roper in state court for fraudulent misrepresentation, negligent misrepresentation, and legal malpractice, alleging that Roper misled them into retaining him and mishandled their case.[1] After Roper filed for Chapter 7 bankruptcy on the eve of trial in that case, Appellants filed a complaint to litigate their claims in the Bankruptcy Court and have any resulting judgment declared non-dischargeable under 11 U.S.C. § 523(a). The Bankruptcy Court dismissed the complaint for failure to state a claim under Rule 12(b)(c), Fed. R. Civ. P., reasoning that Appellants' pleadings were not

---

[1] *Berry, et al, v Robert Chandler, et al.*, Case No. 1611-CC00718, Circuit Court of St. Charles County.

sufficiently specific to meet the heightened pleading requirements of Rule 9(b) and, further, that Appellants failed to sufficiently plead causation.

**State Court Petition**

Appellants' state court petition alleges the following facts. Roper received his Juris Doctor degree and became licensed to practice in Illinois in 2001. He was never licensed in Missouri and never practiced law in any state. In March 2008, he offered to represent Appellants in a $10 million breach-of-contract dispute against National Auto Warranty Services (NAWS), for whom Appellants worked as insurance agents. At that time, Roper did not have an active law license in any state. Roper and Appellants entered into an engagement letter pursuant to which Roper's "law firm" would provide legal services for a contingency fee of 33%. The letter described Roper as "Attorney at Law," on letterhead reflecting an office address in Clayton, Missouri. Roper having represented himself as an experienced Missouri litigator with an office in Clayton, Appellants were unaware that, in fact, Roper had no litigation experience and was not licensed to practice law in Missouri or any other state at the time. Roper reactivated his Illinois license the following month and hired Robert Chandler and his law firm, Baker, Sterchi, Cowden & Rice, to file a lawsuit against NAWS on behalf of Appellants, with the understanding that Roper would handle all communications with Appellants and any negotiations with NAWS.

From March 2008 to March 2010, Roper and Chandler advised Appellants not to mitigate their damages by accepting other work, allegedly to maximize their contingency fee. Appellants estimate this opportunity cost at $5 million. In the summer of 2009, Roper advised Appellants not to accept a settlement offer of $1.4 million from NAWS. Chandler and his law firm withdrew from Appellants' case in November 2009. When Appellants received a consent judgment against NAWS for $2 million in March 2010, NAWS entered bankruptcy, so Appellants received only

$300,000.  Roper filed an attorney's lien against that award.² Appellants assert that they would not have hired Roper had they known of his lack of qualifications.  They further assert that his fraudulent representations caused their financial losses.

The state court case was filed in St. Charles County in 2016 and has been extensively litigated.  Appellants resolved and dismissed their claims against Chandler and Baker Sterchi in May 2021.  With respect to Appellants' remaining claims against Roper, the case was set for a bench trial starting August 26, 2021.  However, on August 23, 2021, Roper filed a Chapter 7 bankruptcy petition, resulting in an automatic stay of the case.

**Appellants' Complaint**

In November 2021, Appellants filed a two-count complaint asking the bankruptcy court to adjudicate their fraud claims against Roper and deem any resulting judgment non-dischargeable under 11 U.S.C. § 523(a)(2)(A) (preserving money debts obtained by fraud) and 11 U.S.C. § 523(a)(6) (preserving a debt for willful and malicious injury).³  In their complaint, Appellants summarize and incorporate by reference the allegations asserted in their state court petition, attached as an exhibit to the complaint.  They assert that Roper's substandard legal advice caused their financial loss and claim actual damages as a direct and proximate cause of Roper's malfeasance.  (Doc. 7-1 at p. 9-10).  They also seek punitive damages by virtue of Roper's outrageous conduct exhibiting evil motives and reckless indifference to their rights.

In February 2022, the bankruptcy court dismissed the complaint for failure to state a claim

---

²     The status of Roper's attorney's lien is not before the Court here.

³     The record in the underlying state court case reflects that the parties failed to appear for a status review in November 2022 and again in January 2023, resulting in dismissal of the case without prejudice.  Based on this development and the language of Appellants' complaint here, the Court infers that Appellants have opted to adjudicate the merits of their fraud claims against Roper in proceedings before the bankruptcy court.

under Rule 12 (b)(c), Fed. R. Civ. P., reasoning that Appellants' allegations were not sufficiently specific to meet the heightened pleading requirements of Rule 9(b) and, further, that Appellants failed to sufficiently plead causation. Appellants promptly appealed the dismissal to this Court, where it was transferred to the undersigned in December 2022. Appellants submit that the bankruptcy court erred in dismissing their complaint because they sufficiently stated claims under 11 U.S.C. § 523(a)(2)(A) and (6).

## DISCUSSION

**Legal Standards**

When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court, reviewing the bankruptcy court's legal determinations *de novo* and findings of fact for clear error. *In re WEB2B Payment Sols., Inc.*, 815 F.3d 400, 404 (8th Cir. 2016). An appellate court may affirm the lower court's dismissal on any basis supported by the record. *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1010 (8th Cir. 2005). This Court reviews the bankruptcy court's grant of a motion to dismiss *de novo*. *In re Archdiocese of Saint Paul & Minneapolis*, 888 F.3d 944, 950 (8th Cir. 2018).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Arthur v. Medtronic, Inc.*, 123 F. Supp. 3d 1145, 1148 (E.D. Mo. 2015). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Archdiocese of Saint Paul*, 888 F.3d at 950 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court may consider matters incorporated by reference

and exhibits attached to the complaint, such as Appellants' state court petition.[4] *Zean v. Fairview Health Services*, 858 F.3d 520, 526 (8th Cir. 2017). The court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But the court is not bound to accept legal conclusions couched as factual allegations. *Id*.

When alleging fraud, a party must state the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b), Fed. R. Bankr. P. 7009(b). To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). In essence, a plaintiff must plead the "who, what, when, where, and how." *Id*. The primary purpose of Rule 9(b) is to afford defendants fair notice of the plaintiff's claims and the factual ground upon which it is based. *Gray v. FedEx Ground Package Sys., Inc.*, 4:06-CV-422-JAR, 2012 WL 13049676, at *2 (E.D. Mo. Mar. 16, 2012).

**Count I**

For Count I, Appellants assert that their claim against Roper for fraudulent misrepresentation is non-dischargeable under 11 U.S.C. § 523(a)(2)(A), covering money obtained by "false pretenses, a false representation, or actual fraud." A false pretense involves implied misrepresentation or conduct intended to create and foster a false impression. *In re Kroesen*, 18-

---

[4] The Bankruptcy Court considered itself limited to the "four corners of the complaint." (Doc. 7-1 at p. 66). While it is true that courts primarily consider the allegations in the complaint, courts may also consider matters incorporated by reference and exhibits attached to the complaint. *Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013). Ultimately this oversight does not affect the Court's analysis.

42624-CAN13, 2020 WL 2121273, at *16 (Bankr. W.D. Mo. May 1, 2020).  A false representation relates to a past or present fact.  *Id*.  And actual fraud is anything that counts as fraud done with wrongful intent.  *Id*. at *17.  To state a claim under this paragraph, a creditor must plead that:

   1. The debtor made a representation,
   2. The debtor knew that the representation was false at the time it was made,
   3. The representation was deliberately made for the purpose of deceiving the creditor,
   4. The creditor justifiably relied on the representation, and
   5. The creditor sustained the alleged loss as the proximate result of the representation.

*Id*. (citing *In re Hernandez*, 860 F.3d 591, 602 (8th Cir. 2017).  Proximate cause requires that the creditor would not have suffered the loss but for the debtor's actions.  *Id*. at *18.

Here, Appellants plead that (1) Roper represented himself as a licensed Missouri attorney with litigation experience and a firm in Clayton; (2) none of these things were true, and Roper had never practiced law in any capacity; (3) relying on these misrepresentations, Appellants engaged Roper to handle their contract dispute against NAWS; (4) Appellants would not have retained Roper had they known that he had no experience and was not licensed in any jurisdiction; and (5) as a result of Roper's bad advice and self-serving motives, Appellants lost a $1.4 million settlement offer and recovered only $300,00, which Roper now claims in fees.

The Bankruptcy Court found these allegations vague and conclusory.  Roper echoes this characterization and focuses primarily on the last element, arguing that Appellants failed to adequately plead proximate causation.[5]  Comparing the pleadings with the prima facie elements of

---

[5]     In his brief in the Bankruptcy Court, Roper also argued that Appellants' fraudulent misrepresentation claim did not constitute money or property obtained by false pretenses or representations as contemplated in § 523(a)(2)(A). (Doc. 7-1 at p. 32-33). Rather, he argued, such a claim falls more squarely under § 523(a)(6) as a potential judgment debt.  The Bankruptcy Court did not discuss this issue but seemed to accept the premise that Appellants' claim was cognizable under (a)(2)(A), and the parties did not brief it here.  As such, the Court assumes without deciding that Appellants' claim is cognizable under paragraph (a)(2)(A) insofar as Roper obtained an engagement letter and a 33% interest in Appellants' damages.  *See e.g., In re Dallam*, 850 F.2d 446 (8th Cir. 1988) (where debtor made misrepresentations to obtain title insurance).

§ 523(a)(2)(A) and drawing all reasonable inferences in Appellants' favor, this Court finds the "who, what, when, where, and how" sufficiently pleaded to withstand dismissal. To wit, Appellants specify that Roper misrepresented his qualifications and experience in March 2008 in Clayton, Missouri, in order to obtain Appellants' engagement and a contingency fee. This affords Roper fair notice of Appellants' claims sufficient to enable him to respond.

However, the Court must agree that Appellants' bare pleading as to causation is tenuous at best and entirely conclusory. Appellants plead that they would not have hired Roper had they known of his lack of qualifications and, as a result of his self-serving bad advice, they lost the opportunity to recover $1.4 million from NAWS. While the Court finds Roper's deceptive inducement reprehensible from an ethical standpoint, the fact remains that Appellants eventually obtained a consent judgment of $2 million. It was only because of NAWS's intervening bankruptcy that Appellants were unable to recover the full amount.

Although proximate cause is generally reserved for the trier of fact, a court may decide the issue as a matter of law when an unforeseeable intervening cause – one that is not a natural product of the original negligence – interrupts the chain of events and eclipses the original actor's role in the plaintiff's injury. *Esmond v. Bituminous Cas. Corp.*, 23 S.W.3d 748, 753 (Mo. App. W.D. 2000) (affirming dismissal on the pleadings). NAWS's bankruptcy was outside the natural consequences of Roper's conduct.[6] As such, even accepting all pleadings as true, Appellants cannot establish causation and, therefore, their claim cannot proceed. The Court will affirm the Bankruptcy Court's dismissal of Count I.

---

[6] By contrast, the Court need not speculate as to co-counsel's role, which flows directly from Roper's actions.

**Count II**

For Count II, Appellants assert that their claim against Roper for fraudulent misrepresentation is non-dischargeable under 11 U.S.C. § 523(a)(6) covering debts for "willful and malicious injury by the debtor." A non-dischargeability action under this paragraph has three elements: (1) the debtor caused an injury to the creditor; (2) the injury must have been willfully inflicted – that is, the debtor must have desired the injury or must have been substantially certain that his conduct would result in the injury; and (3) the debtor's actions must have been malicious *In re Luebbert*, 987 F.3d 771, 778 (8th Cir. 2021). Willful and malicious are two distinct requirements. *In re Porter*, 539 F.3d 889, 893 (8th Cir. 2008) (reviewing a finding of non-dischargeability of an underlying judgment). A willful injury is a deliberate or intentional invasion of the legal rights of another. *Id*. at 984. Willfulness is subjective, "requiring proof that the debtor desired to bring about the injury or was, in fact, substantially certain that his conduct would result in the injury that occurred. *Roussel v. Clear Sky Properties, LLC*, 829 F.3d 1043, 1048 (8th Cir. 2016) (affirming non-dischargeability of judgment debt for breach of fiduciary duty where jury award of punitive damages justified collateral estoppel). Malice requires more than recklessness or reckless disregard. *Id*. at 1047. Maliciousness is conduct targeted at the creditor, in the sense that the conduct is certain or almost certain to cause financial harm. *Id*. "While intentional harm may be very difficult to establish, the likelihood of harm in an objective sense may be considered in evaluating intent." *Id*.

As relevant to these elements, Appellants plead that, in addition to Roper's misrepresentations inducing them to hire him, Roper dissuaded them from accepting other work to their detriment in order to increase his contingency fee and advised them not to accept the $1.4 million settlement offer, thereby gambling their well-being for his own gain. While these

pleadings arguably allege reckless conduct, they do not assert or permit an inference that Roper willfully and maliciously desired to cause harm to Appellants. On the contrary, it appears that Roper's aim was to maximize Appellants' recovery and thus his own fee. "Debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *In re Porter*, 539 F.3d at 893-894. Appellants also plead that Roper acted with evil motives and reckless indifference, but this bare allegation is conclusory without supporting facts suggesting malice. Even accepting Appellants' allegations as true and drawing all inferences in their favor, the Court finds Appellants' pleadings insufficient to state a claim of willful and malicious injury under § 523(a)(6). The Court will affirm the Bankruptcy Court's dismissal of Count II.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Bankruptcy Court's judgment is **AFFIRMED**.

Dated this 24th day of March, 2023.

_/s/ John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE